OPINION
Appellants, Virgil C. Ridgway and Marilyn R. Ridgway, appeal from the May 8, 2001 judgment entry of the Portage County Court of Common Pleas granting the motion for summary judgment of appellee, Grange Mutual Casualty Company.
Appellants' home was insured under Homeowners Policy HO-3 Special ("the policy") issued by appellee. On January 10, 1999, appellants' home was severely damaged by a fire. Appellee paid appellants $312,000 for the damage to their home and $145,600 for the damage to their personal property.
Appellants filed a claim for breach of contract and bad faith failure to pay on September 7, 2000, alleging that appellee owed them an additional $31,200 for the damage to their home and $14,560 for damage to their personal property.
Appellee filed a motion for summary judgment on December 12, 2000. Appellants filed a memorandum in opposition and a cross-motion for partial summary judgment on January 16, 2001. In its May 8, 2001 judgment entry, the trial court granted appellee's motion for summary judgment and denied appellants' motion for partial summary judgment. Appellants have filed a timely appeal and make the following assignment of error:
 "The trial court erred by granting appellee's motion for summary judgment."
Before a trial court may grant a motion for summary judgment, it must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein
(1996), 76 Ohio St.3d 383, 385. "On appeal, the trial court's granting of summary judgment is reviewed de novo." Petrarca v. Phar-Mor, Inc. (Sept. 21, 2001), Trumbull App. No. 2000-T-0121, unreported, 2001 WL 1117015, at 2.
The construction of an insurance contract is a matter of law.Nationwide Mut. Ins. Co. v. Eckmeyer (Sept. 7, 2001), Portage App. No. 2000-P-0054, unreported, 2001 WL 1023527, at 2. In construing an insurance contract, a court should attempt to determine the intention of the parties and, if the language of the policy is unambiguous, it should be enforced as written. Id. However, if a provision is open to more than one interpretation, it should be construed against the insurer and in favor of the insured. Id.
Here, the policy provided for three types of coverage: Coverage A for the dwelling, Coverage B for other structures, and Coverage C for personal property. The limits specified in the policy declarations ("the declarations") were as follows: Coverage A — $208,000; Coverage B — $20,800; Coverage C — $145,600.
Appellants executed an endorsement to the policy ("the endorsement"), which provided that they would receive up to 150% of appellee's Coverage A limit of liability as stated in the declarations. Under the terms of the policy, in the event of a loss, pursuant to paragraph 2(b)(6) of Conditions Section I ("paragraph 2(b)(6)"), "[i]f there are no other structures, the limit of liability for Coverage B shall be added to the limit of liability shown for Coverage A, and the sum of the two shall be [appellee's] limit of liability under Coverage A." Appellants contend that there were no other structures on the property; therefore, if the language of paragraph 2(b)(6) is read in conjunction with the endorsement, they are entitled to receive 150% of the sum of Coverage A and Coverage B liability limits stated in the declarations, which would equal $343,200 [150% of $228,800 (the sum of the limits of appellee's liabilities under Coverages A ($208,000) and B ($20,800))]. We disagree.
The endorsement states that "[f]or an additional premium and your agreement to all of the conditions contained in this endorsement, the following extensions of coverage apply * * *." From this language, we conclude that the provisions of the endorsement control the interpretation of the contract in this instance. Under the terms of the endorsement, appellee agreed "to settle covered losses to the dwelling insured under Coverage A at replacement cost up to a maximum of 150% of the specific limit of liability shown on the Declarations of thispolicy." (Emphasis added.) This language is unambiguous. As stated above, the specific limit of Coverage A liability shown on the declarations for the dwelling was $208,000, not the sum of appellee's Coverage A and Coverage B limits of liability as proposed by appellants. Therefore, appellants were entitled to receive a maximum of 150% of $208,000, or $312,000, which was the sum paid by appellee to appellants. We would note that this amount is significantly greater than what appellants would have received if they had not executed the endorsement. In the absence of the endorsement, and assuming that paragraph 2(b)(6) were applicable for the damage to their home, appellants would have been entitled to a maximum of the sum of liability limits of Coverages A and B, or $228,800.
Because appellee has met its obligations to appellants in full pursuant to the unambiguous terms of the policy, the trial court did not err in granting appellee's motion for summary judgment.[1]
Appellee contends in its appellate brief that it is entitled to summary judgment on count two of appellants' complaint, which was for bad faith failure to pay. The trial court granted appellee summary judgment on all of appellants' claims, and appellants have not raised this issue of bad faith on appeal; therefore, it is not properly before us and has been waived by appellants.
For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.
CHRISTLEY, J., GRENDELL, J., concurs.
[1] Appellee submits that even if the policy were read in the manner proposed by appellants, paragraph 2(b)(6) would not be applicable because there was another "structure" on appellants' property, i.e., a fence. Appellee suggests that its proposition that a fence is a "structure" under the terms of the policy is supported by a number of dictionary definitions. The issue is moot in this case because of our treatment of the first assignment of error. It appears to this court that case law in Ohio has not yet expressly addressed this issue. However, we simply would note that the definition of a structure offered by appellee is broad enough to encompass a tree house, dog kennel or compost bin.